UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

TINA GHOLSTON,                    )        CASE NO.  5:11-CV-1482
                                  )
              Plaintiff,          )
                                  )        MAGISTRATE JUDGE MCHARGH
       v.                         )
                                  )
COMMISSIONER OF SOCIAL            )        __MEMORANDUM OPINION & ORDER__
SECURITY ADMINISTRATION,          )
                                  )
              Defendant.

 This case is before the Magistrate Judge pursuant to the consent of the parties.  (Doc. 13). The issue before the undersigned is whether the final decision of the Commissioner of Social Security (the "Commissioner") denying Plaintiff Tina Gholston's application for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq*., is supported by substantial evidence and, therefore, conclusive.

 For the reasons set forth below, the Court AFFIRMS the decision of the Commissioner.

## I. INTRODUCTION & PROCEDURAL HISTORY

 On December 29, 2003, Plaintiff Tina Gholston ("Plaintiff" or "Gholston") applied for Supplemental Security Income benefits alleging she became disabled on February 28, 2003, due to suffering from a host of ailments including bipolar disorder, chronic pain, carpal tunnel syndrome, nerve degeneration and nerve problems in her hips and legs.  (Tr. 44-46, 54). Plaintiff's application was denied initially and upon reconsideration.  (Tr. 18-19).  Thereafter, Plaintiff requested a hearing before an administrative law judge to contest the denial of her request for benefits.  (Tr. 31).  The Social Security Administration granted Gholston's request and scheduled a hearing.  (Tr. 32-33, 37-41).

On January 17, 2006, Administrative Law Judge James Mitchell ("ALJ Mitchell") convened a hearing via video to evaluate Plaintiff's application. (Tr. 322-63).  The ALJ presided over the hearing from Stockton, California, and Gholston, along with her attorney, appeared in Cleveland, Ohio.  (*Id*.).  Vocational expert, Ms. Susan Moranda, also appeared and testified at the proceeding.  (*Id*.).  On October 24, 2006, ALJ Mitchell issued his decision denying Plaintiff's application for benefits after applying the five-step sequential analysis.[1]  (Tr. 11-17).  Gholston requested review of ALJ Mitchell's decision from the Appeals Council, (Tr. 367), but, on June 22, 2011, it denied Plaintiff's request making ALJ Mitchell's decision the final decision of the Commissioner.  (Tr. 364-66).  Thereafter, Plaintiff appealed the Commissioner's decision to this Court.

---

[1]  The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability".  *See* 20 C.F.R. § 416.920(a). The Sixth Circuit has summarized the five steps as follows:

    (1)    If a claimant is doing substantial gainful activity – i.e., working for profit – she is not disabled.

    (2)    If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.

    (3)    If a claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, the claimant is presumed disabled without further inquiry.

    (4)    If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

    (5)    Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).

On February 23, 2009, United States Magistrate Judge George J. Limbert ("Judge Limbert") issued a Memorandum Opinion and Order reversing ALJ Mitchell's decision and remanding the case back to the Social Security Administration for further review.  (Tr. 403-15). Plaintiff asserted two objections to ALJ Mitchell's decision.  First, Plaintiff alleged ALJ Mitchell erred in assessing her residual functional capacity ("RFC") by finding that "she experienced only slight limitations in the ability to reach overhead with both arms and in fine and gross manipulation and in relying upon her improvement following her carpal tunnel decompression" because she claimed medical records corroborated her consistent complaints of pain, numbness and tingling in her hands, warranting greater restrictions than those imposed by the ALJ.  (Tr. 408-11).  ALJ Mitchell rejected Plaintiff's claims because she had not sought any medical treatment since January 2005.  (*Id.*).  Judge Limbert found ALJ Mitchell's evaluation of Plaintiff's credibility was supported by the record, and that there was no reason to disturb his ruling.  (*Id.*).

Notwithstanding, Judge Limbert partially credited Plaintiff's second assignment of error. Plaintiff argued ALJ Mitchell failed to properly evaluate the opinions of her treating physician, Dr. S. Mark Fratczak, who opined that Gholston had a limited ability to push, pull and lift due to shoulder pain, and could not perform prolonged standing, walking or sitting due to discomfort. (Tr. 411).  With regard to the limitations Dr. Fratczak placed on Plaintiff's ability to push, pull and lift, Judge Limbert ruled that any error committed by ALJ Mitchell in evaluating this evidence was harmless because Dr. Fratczak did not quantify Plaintiff's limitations in this area. (Tr. 413).  Accordingly, Judge Limbert found ALJ Mitchell's RFC, restricting Plaintiff to lifting and carrying 10 pounds frequently and 20 pounds occasionally, was not inconsistent with Dr. Fratczak's opinion.

3

However, Judge Limbert did not rule similarly with respect to ALJ Mitchell's review of Dr. Fratczak's finding that Plaintiff was precluded from prolonged standing, walking and sitting. (Tr. 413-15).  ALJ Mitchell indicated he discounted this finding because it appeared to be based upon Plaintiff's subjective statements rather than on objective findings.  (Tr. 413).  Judge Limbert found this reasoning was faulty because there were clinical findings to support the doctor's findings, namely Dr. Fratczak's clinical examination of Gholston.  (Tr. 413-14).  The judge concluded this error was not harmless because ALJ Mitchell's RFC was not compatible with Dr. Fratczak's opinion, as a reasonable person would not find that a person precluded from "prolonged" standing, walking or sitting would be able to perform such activities for six out of eight hours each workday.  (Tr. 414-15).  Accordingly, Judge Limbert determined it was necessary for the Commissioner to re-evaluate Dr. Fratczak's opinion and to articulate valid reasons for the level of deference afforded the opinion.  (Tr. 415).  Thus, following Judge Limbert's ruling, the Appeals Council remanded Gholston's case for further review.  (Tr. 387A-387D).

Prior to Judge Limbert issuing this ruling, Plaintiff filed a second application for Supplemental Security Income benefits on May 7, 2007, alleging a disability onset date of October 25, 2006.  (Tr. 433-36).  This application was also denied on initial review and on reconsideration.  (Tr. 418-24, 426-28).  Plaintiff requested a hearing before an administrative law judge to contest this denial also.  (Tr. 429-30).  The Social Security Administration linked the two applications, and conducted a single hearing on both.  *See* (Tr. 1033).

On February 22, 2010, an administrative hearing was held before Administrative Law Judge Richard Staples (the "ALJ") pursuant to Judge Limbert's order.  (Tr. 1030-50).  Gholston did not appear at this proceeding; instead, she waived her appearance and sat in a waiting room.

4

(Tr. 1034).  Plaintiff's attorney was present at the proceeding, along with vocational expert, Mr. Ted Macy (the "VE"), and medical expert, Dr. Malcolm Brahms (the "ME"), who both testified. (Tr. 1030-50).

On March 9, 2010, the ALJ issued a decision partially favorable to Plaintiff.  (Tr. 369-87).  The ALJ held Plaintiff was not disabled at any time prior to January 1, 2009, the date on which the ALJ found Gholston became disabled.  (*Id.*).  Gholston objected to the ALJ's ruling regarding her disabled status prior to January 1, 2009, and sought review of the decision from the Appeals Council.  (Tr. 367-68).  But, on June 22, 2011, the council denied Gholston's request, thereby making the ALJ's decision the final decision of the Commissioner.  (Tr. 364-66). Plaintiff now seeks judicial review of the ALJ's decision pursuant to 42 U.S.C. § 1383(c).

Plaintiff, born on November 11, 1956, was 46 years old on the date she first applied for benefits.  *See* (Tr. 44).  Thus, Social Security considered her as a "younger person", 20 C.F.R. § 416.963(c), as of that date.  However, it later viewed Gholston as a person "closely approaching advanced age", 20 C.F.R. § 416963(d), after she turned 50 years old.  Plaintiff earned her GED and completed one year of college.  (Tr. 60, 447).  She also completed special job training on the subject of EKGs and phlebotomy.  (Tr. 447).  Gholston has past experience working as a home health aide and as a nurse's aide.  (Tr. 357).

## II. ALJ's RULING

After completing a review of the record, the ALJ determined Plaintiff was not disabled prior to January 1, 2009.  (Tr. 374-87).  As a preliminary matter, the ALJ addressed Plaintiff's RFC for the period beginning February 28, 2003, the onset date initially alleged by Plaintiff, through October 24, 2006, the date of ALJ Mitchell's decision.  (Tr. 376-78).  The ALJ ruled the RFC assessment announced by ALJ Mitchell, particularly the finding that Plaintiff retained the

ability to sit, stand or walk for six hours each workday, accurately portrayed Plaintiff's abilities through October 24, 2006.  (*Id*.).

Then, at step one of the sequential evaluation analysis, the ALJ found that although Plaintiff had worked since her alleged onset date, this activity had not risen to the level of substantial gainful activity.  (Tr. 378).  At step two, the ALJ ruled Gholston suffered from the following severe impairments since October 25, 2006: status post gastric bypass surgery, status post incisional hernia repair, status post bilateral decompression surgery, lumbar degenerative disc disease, bilateral carpal tunnel syndrome, bilateral shoulder arthrosis and impingement and bipolar disorder.  (*Id*.).  However, at step three, the ALJ concluded none of these impairments, individually or combined, met or equaled one of the listings set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 379).  Before moving to the next step in the analysis, the ALJ evaluated Plaintiff's RFC.  (Tr. 379-84).  He determined Plaintiff retained the ability to perform a limited range of light work through December 31, 2008.  (*Id*.).  However, as of January 1, 2009, the ALJ held Plaintiff only retained the ability to perform sedentary work.  (Tr. 384-85).

Because the ALJ found Plaintiff could not perform more than light work, at step four the ALJ ruled Plaintiff did not have the ability to return to her prior work because those positions exceeded Plaintiff's RFC level.  (Tr. 385).  Notwithstanding, at the final stage in the analysis, the ALJ found there were jobs, existing in the national economy in significant numbers, which Plaintiff could have performed prior to January 1, 2009.  (Tr. 385-86).  Accordingly, the ALJ ruled Plaintiff was not disabled during this time period.  However, given Plaintiff's age, educational background, work experience, and RFC, the ALJ held Plaintiff became disabled as of January 1, 2009, by operation of Medical-Vocational Rule 201.14.  (Tr. 386).

### III.  DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when she establishes disability within the meaning of the Social Security Act.  *See* 42 U.S.C. §§ 423, 1381.  A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  *See* 20 C.F.R. §§ 404.1505, 416.905.

### IV.  STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards.  *See Cunningham v. Apfel*, 12 F. App'x 361, 362 (6th Cir. 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)*; Richardson v. Perales*, 402 U.S. 389, 401 (1971).  "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence.  *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981).  Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed.  *Id.*  The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion.  *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)*; Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).  This Court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner*, 745 F.2d at 387.  However, it may examine all the evidence

7

in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision.  *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

V.  <u>ANALYSIS</u>

Plaintiff has asserted three assignments of error attacking the ALJ's decision.  First, Plaintiff contends the ALJ failed to comply with Judge Limbert's remand order in re-assessing the findings offered by Plaintiff's treating physician, Dr. Fratczak.  Second, Gholston argues the ALJ's RFC finding, covering the period prior to January 1, 2009, is not supported by substantial evidence.  Finally, Plaintiff claims remand is proper to allow the ALJ to seek additional expert testimony regarding Plaintiff's health between October 2006 and January 2009.  None of these objections warrant remand or reversal.

1.  <u>Judge Limbert's Remand Order</u>

On February 23, 2009, Judge Limbert denied in part and granted in part Plaintiff's appeal of ALJ Mitchell's decision.  The central issue in this case surrounds Judge Limbert's ruling regarding ALJ Mitchell's evaluation of Dr. Fratczak's findings.  Plaintiff asserted ALJ Mitchell's RFC was not supported by the record because it stated she could lift and carry up to 10 pounds frequently and 20 pounds occasionally, though Dr. Fratczak indicated she retained a limited ability to push, pull and lift.  Judge Limbert rejected this challenge holding that because Dr. Fratczak never quantified the limitations he placed on Plaintiff's ability to lift and carry, there was no basis for finding ALJ Mitchell's RFC to be inconsistent with Dr. Fratczak's opinion.

Nevertheless, Judge Limbert credited Plaintiff's arguments contesting ALJ Mitchell's evaluation of Dr. Fratczak's opinion that Gholston was not capable of performing "prolonged" standing, sitting or walking.  ALJ Mitchell discounted this portion of Dr. Fratczak's opinion

8

because he found it was based upon Plaintiff's subjective complaints rather than on objective evidence.  Judge Limbert held the ALJ's reasoning was in error because there were clinical findings to support the doctor's opinion, namely the doctor's objective observations during his clinical examination of Plaintiff.  Therefore, Judge Limbert ruled ALJ Mitchell did not articulate valid reasons for discrediting this portion of Dr. Fratczak's opinion.  Furthermore, the error was not harmless because ALJ Mitchell's RFC described Plaintiff as retaining the ability to sit, stand and walk for six hours each workday – a finding which was not compatible with Dr. Fratczak's finding prohibiting Plaintiff from performing "prolonged" sitting, standing and walking.

Accordingly, Judge Limbert held "the ALJ's treatment of Dr. Fratczak's opinion insofar as it relate[d] to prolonged sitting, standing, and walking [could not] be considered harmless and remand [wa]s necessary."  (Tr. 415).  But, Judge Limbert noted his ruling did not require the ALJ to adopt Dr. Fratczak's opinion on remand.  Rather, Judge Limbert directed the ALJ to re-evaluate the doctor's opinion, and on remand, to state legitimate reasons for the weight assigned to the opinion.  Thus, Judge Limbert limited the scope of review on remand.  He ordered the ALJ to re-assess Dr. Fratczak's opinion that Plaintiff was not capable of prolonged sitting, standing or walking and to supply reasons for weight afforded to that finding.

The ALJ complied with Judge Limbert's order.  The ALJ began by acknowledging Dr. Fratczak's status as Gholston's treating physician and discussing the doctor's findings.  The ALJ never stated outright how much weight he afforded the doctor's finding, but the ALJ explained that Dr. Fratczak's finding – though supported by his clinical examination of Plaintiff—was not supported by the doctor's prior and subsequent treatment notes.  Dr. Fratczak's pertinent finding was issued in January 2004.  But, the ALJ highlighted that in May 2003 Plaintiff reported to Dr. Fratczak that she walked three miles per day.  Similarly, during an appointment in May 2004,

shortly after Dr. Fratczak issued his opinion, the doctor noted Gholston reported no physical complaints and his examination of Plaintiff was normal.  The ALJ also commented that Dr. Fratczak's finding was "undermined by the lack of strongly positive, consistently noted clinical signs of a musculoskeletal impairment affecting the claimant's abilities to sit, stand and walk". (Tr. 377).  Although the undersigned expected the ALJ to clearly specify the amount of weight he attributed to Dr. Fratczak's findings on this issue given Judge Limbert's instructions, the ALJ's evaluation of the doctor's opinion and the explanation provided were legally sufficient.

When a treating source's opinion is not entitled to controlling weight, the adjudicator must determine how much weight to assign to the opinion and supply "good reasons" for the weight assigned.  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 416.927(c)(1)-(6).  Yet, "[i]f the ALJ's opinion permits the claimant and a reviewing court a clear understanding of the reasons for the weight given a treating physician's opinion, strict compliance with the rule may sometimes be excused."  *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010).  In this case, the ALJ clearly explained why he did not credit this portion of Dr. Fratczak's opinion.  The ALJ found it was contradicted by the doctor's findings, both before and after the doctor issued this opinion.

The ALJ also relied upon the opinions of the medical expert, Dr. Malcolm Brahms, to evaluate Dr. Fratczak's finding on Plaintiff's ability to sit, stand and walk.  The ME reviewed Plaintiff's medical file through October 2006 and opined Plaintiff would have been able to sit, stand or walk for six hours each workday prior to October 24, 2006.  (Tr. 1037-38).[2]  The ALJ

---

[2]  In her brief, Plaintiff partially questioned the validity of the ME's testimony, arguing it was unclear whether the ME had the benefit of reviewing all of the electronic exhibits in the record prior to issuing his opinion on Plaintiff's disabled status.  (Pl.'s Br. at 19-20).  Although there was some discussion at the hearing suggesting *the ALJ* was unaware that portions Plaintiff's file

explained he credited the ME's opinion over that of Dr. Fratczak because the ME: 1) was a practicing orthopedist; 2) was an expert in evaluating disability claims and had several years of experience doing so; 3) gave testimony under oath subject to examination by Plaintiff's attorney; and 4) offered findings which were consistent with the record as a whole.  (Tr. 377).

Plaintiff contends it was not proper for the ALJ to weigh the ME's opinions more favorably than those of Dr. Fratczak because the ME was a nonexamining physician.  Relying upon *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987), Gholston asserts "the opinion of a nonexamining physician is entitled to little weight if it is contrary to the opinion of the claimant's treating physician." *Id.* (*citing Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985)).  But, Plaintiff's reliance on *Shelman* is misplaced.  In that case, the Sixth Circuit first noted that an ALJ is not bound by the findings of a claimant's treating source when the opinion is not supported by sufficient medical data.  *Id.* at 320-21.  However, in *Shelman*, the ALJ never made a finding that the treating physicians' opinions were unsupported.  *Id.*  The court therefore found that it was not reasonable for the ALJ to credit a nonexamining physician's opinion more favorably than the treating source's opinion, without some explanation as to why the ALJ rejected the treating sources' findings.  *Id.*

The instant case is distinguishable from *Shelman* because the ALJ here explained why Dr. Fratczak's finding was not entitled to controlling weight.  The ALJ noted the doctor's opinions were contradicted by his prior and subsequent treatment notes which showed Plaintiff's

_____

were electronic records, (Tr. 1035, 1042-43), Plaintiff's counsel did not raise any of these issues during her questioning of the ME, or otherwise, alert the ALJ that she challenged the ME's testimony on this ground.  Because Plaintiff did not object to the ME's testimony during the hearing, she cannot now successfully challenge this evidence now.  *Koller v. Astrue*, No. 2:10-284-DCR, 2011 WL 5301569, at *3 (E.D.Ky. Nov. 3, 2011).

ability to sit, stand and walk were not so severely impaired for the twelve month period before or after Dr. Fratczak issued his finding.  This was an appropriate basis for the ALJ to reduce the weight attributed to the doctor's finding.  Because the ALJ provided reasons for discounting Dr. Fratczak's finding, it was then appropriate for him to credit the ME's opinions.  *See Brumett v. Comm'r of Soc. Sec.*, No. 1:07-cv-955, 2009 WL 690250, at *8 (S.D.Ohio Mar. 11, 2009).

Gholston's remaining challenges to the ALJ's evaluation of Dr. Fratczak's opinion are without merit.  Plaintiff suggests that remand is necessary because after the ALJ determined Dr. Fratczak's finding was not entitled to controlling weight, the ALJ did not expressly indicate that he continued to weigh the doctor's opinions under the factors enumerated in 20 C.F.R. § 416.927(c).  While it may have been preferable for the ALJ to affirmatively convey that he considered these factors in determining how much weight to attribute to Dr. Fratczak's opinion, Plaintiff has not cited, and the Court is not aware of, any binding authority requiring an ALJ to make such an explicit finding.  *See Blanchard v. Comm'r of Soc. Sec.*, No. 11-cv-12595, 2012 WL 1453970, at *16 (E.D.Mich. Mar. 16, 2012).  The record need only "reflect that the ALJ considered those factors relevant to his assessment."  *Id.* (citing *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 F. App'x 448, 450 (5th Cir. 2007)).  A reading of the ALJ's opinion demonstrates that he considered nearly all of the factors listed in 20 C.F.R. § 416.927(c)(2) — specifically, the length of Dr. Fratczak's treatment relationship with Plaintiff, the nature and extent of the treatment, the evidence supporting the doctor's findings, and the consistency of the doctor's opinions with the record as a whole.  Thus, Plaintiff's argument is moot.

Neither is there merit to Plaintiff's claim that the ALJ somehow impermissibly "cherry-picked" between which portions of Dr. Fratczak's to accept and reject.  Judge Limbert already

12

determined that ALJ Mitchell's RFC properly accounted for Dr. Fratczak's other findings.  The judge's order effectively limited remand to a review of Dr. Fratczak's finding on Plaintiff's capacity to sit, stand and walk, and directed the ALJ to articulate reasons for the level of deference afforded this finding.  Therefore, the ALJ was not required to discuss why other portions of Dr. Fratczak's opinion were credited.  Judge Limbert had already determined that the RFC announced by ALJ Mitchell had reasonably accounted for Dr. Fratczak's other findings.

### 2.  Plaintiff's RFC Prior To January 1, 2009

Next, Gholston challenges the ALJ's RFC determination assessing her ability to work prior to January 2009.[3]  The ALJ stated Plaintiff's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that prior to January 1, 2009, the date the claimant became disabled; the claimant had the residual functional capacity to perform a range of light work.  Specifically, the claimant could lift and carry twenty pounds occasionally and ten pounds frequently; sit, stand or walk for six hours in an eight hour workday; she was slightly limited in overhead reaching with both arms and in fine and gross manipulation with both hands; she needed to avoid exposure to temperature extremes; she was slightly limited in her ability to perform simple, routine and repetitive tasks and she required occasional supervision; she had slight to moderate pain and required occasionally [sic] medication.

(Tr. 379-80).

Plaintiff specifically objects to two portions of the ALJ's RFC finding.  First, Gholston argues the ALJ's finding that she was "slightly limited" in overhead reaching and manipulating with her hands is not supported by the evidence because she is more restricted in her upper

---

[3] Though Plaintiff stated she challenged the ALJ's RFC finding prior to January 2009, Plaintiff's argument here seems to focus on the ALJ's RFC finding for the period between October 25, 2006, the day after ALJ Mitchell's decision, and December 2008.  Because the undersigned finds the ALJ provided a proper basis for rejecting Dr. Fratczak's opinion, the RFC announced by ALJ Mitchell, covering the period of February 2003 through October 24, 2006, adequately reflects Plaintiff's RFC for that time.

extremities due to her shoulder impairments.[4]  Of the evidence the ALJ relied upon in making this finding, he considered treatment notes wherein Plaintiff was described as "moving nicely" just days after surgery on her right shoulder and MRI results from April 2007 showing no signs of a tear.  Yet, Plaintiff contends this aspect of the ALJ's RFC determination is unsupported because it was based upon the ALJ's lay interpretation of the MRI results and "[a]n ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings".  (Pl.'s Br. at 16) (*citing Deskin v. Comm'r of Soc. Sec.*, 605 F.Supp.2d 908, 912) (2008)).  Gholston claims there was no medical opinion evidence in the record to support such minimal restrictions on her ability to use her arms.

While Plaintiff is correct that an ALJ is not equipped with the medical knowledge to convert bare medical findings into specific functional limitations, Plaintiff overlooked other medical evidence in the record which supported the ALJ's RFC.  After Plaintiff's MRI from April 2007, state agency physician, Dr. Maria Congbalay, conducted a review of Plaintiff's medical record on July 9, 2007.  (Tr. 702-09).  Dr. Congbalay acknowledged the MRI of Plaintiff's shoulder, and opined Plaintiff was limited to only "frequent" use of her right shoulder to perform overhead reaching, handling and fingering.  (Tr. 703-05).  Furthermore, Dr.

---

[4] Gholston also challenges the ALJ's use of the term "slightly limited" in the RFC because the ALJ failed to define this term. Although Plaintiff is correct that the term "slightly limited" does not have a colloquial meaning within the Social Security context, the ALJ's use of this phrase caused no harm to Plaintiff.  The ALJ's step five finding, identifying jobs which Gholston could perform, was based on testimony provided by the VE at the first administrative hearing held before ALJ Mitchell.  During that hearing, ALJ Mitchell posed a series of hypothetical questions to the VE, in which he clarified the meaning of "slightly limited."  (Tr. 359-62).  ALJ Mitchell indicated "slightly limited" meant that the individual could complete the task for "six hours or less each shift." (*Id.*).  The VE then identified jobs fitting that description.  This clarification cured any ambiguity arising from the ALJ's use of this term in his RFC.

Congbalay stated Plaintiff's claims regarding the severity of her symptoms were not consistent with the evidence of record because Plaintiff made different reports of symptoms to different physicians.  (Tr. 707). For instance, Plaintiff's presentation to her doctor following surgery essentially yielded normal results; however, when Plaintiff presented to another doctor she alleged pain and indicated she experienced no benefit from surgery.  (*Id.*).  Dr. Congbalay noted these differences and explained that Gholston's complaints of pain were not consistent with the most recent MRI of her right shoulder.  (*Id.*).

Dr. Congbalay's opinion provides substantial support for the ALJ's finding regarding Plaintiff's ability to use her upper extremities.  The Physical RFC Assessment form Dr. Congbalay completed defined "frequently" as "occurring one-third to two-thirds of an 8-hour workday (cumulative, not continuous)."  (Tr. 702).  The ALJ's RFC indicating that Plaintiff only suffered from a "slight" limitation in performing various tasks with her upper extremities is not inconsistent with Dr. Congbalay's finding.  Although the term "slightly" is not one of the formally defined terms recognized by the Social Security Administration to measure one's abilities, a reasonable person would likely conclude that if Gholston could perform overhead reaching, handling and fingering for up to two-thirds of the workday, i.e. frequently, she only suffered from a "slight" impairment in this area of functionality.

While more weight is generally afforded to opinions from sources who have examined the claimant over those who have not, *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981); 20 C.FR. § 416.927(c)(1), opinions from nonexamining state agency physicians are important, and under certain circumstances may be entitled to deferential weight. SSR 96-6p, 1996 WL 374180, at *3.  The Commissioner views state agency reviews as "highly qualified physicians . . . who are experts in Social Security disability evaluation."  20 C.F.R. §

416.927(e)(2)(i).  In the instant case, the ALJ explained that no physician who had treated or examined Plaintiff for her impairments between October 25, 2006 and January 1, 2009, had "expressed an opinion as to her [RFC] during that time".  (Tr. 383).  Thus, Dr. Congbalay's assessment of Plaintiff's RFC during this time was particularly relevant.  Although Gholston accused the ALJ of blindly adopting ALJ Mitchell's RFC finding without considering all of the new evidence in the record, this accusation is meritless.  The ALJ adequately discussed the pertinent medical evidence contained in the record through the date of the decision.  The fact that the RFC issued by the ALJ was nearly identical to ALJ Mitchell's RFC does not mean that it was not based upon the ALJ's independent review of all the evidence before him.  *See Partin v. Astrue*, No. 6:07-c284-JMH, 2008 WL 4280001, at *2 (E.D. Ky. Sept. 17, 2008) (finding there was substantial evidence to support the ALJ's RFC even though it was the same RFC as articulated by a prior ALJ).

Nevertheless, Plaintiff places great emphasis on the fact that Dr. Congbalay, who issued his opinion in July 2007, was not privy to MRI results from February 2008 which indicated "the *possibility* of a partial-thickness articular-sided tear" in Plaintiff's right shoulder.  (Tr. 785) (emphasis added).  Plaintiff contends this evidence shows a change from Plaintiff's prior MRI which showed no tear.  Though Gholston's February 2008 MRI showed a *possible* tear, Plaintiff did not present the ALJ or the Court with any medical opinion evidence demonstrating that it required the ALJ to place greater restrictions on Plaintiff's ability to use her upper extremities than those noted by Dr. Congbalay, prior to January 2009.

Instead, Plaintiff points to Dr. Ned Nafziger's findings dated January 19, 2009, wherein the doctor restricted Plaintiff to only *occasional* reaching, pushing and pulling.  (Tr. 850).  But, because Dr. Nafziger issued this opinion after January 1, 2009, the date upon which the ALJ

16

deemed Plaintiff disabled, the doctor's opinion does little to show Plaintiff required such restrictions between October 2006 and January 2009.  Accordingly, Dr. Nafziger's findings do not necessarily undercut Dr. Congbalay's opinion.

The Court also rejects Plaintiff's challenge of the ALJ's RFC with respect to her psychological limitations.  Gholston contends the ALJ's RFC did not properly incorporate the findings of her treating psychiatrist, Dr. Pradheep Manudhane, nor supply valid reasons for discounting the doctor's findings.  To begin, Plaintiff notes that during her treatment relationship with Dr. Manudhane, the doctor diagnosed her with a number of mental impairments.  However, as Defendant notes, the mere diagnosis of a condition does not speak to its severity or indicate the functional limitations caused by the ailment.  *See Young v. Sec'y of Health & Human Servs.,* *925 F.2d 146, 151 (6th Cir. 1990).*  As a result, the fact that Dr. Manudhane diagnosed Plaintiff with various mental impairments, is not enough to show that any one or more of those conditions were disabling, or entitled the doctor's opinions to greater weight.

Though the ALJ did not expressly indicate how much weight he afforded Dr. Manudhane's opinion, the ALJ clearly indicated that he accepted at least a portion of the doctor's findings.  The ALJ stated, "[t]o the extent that Dr. Manudhane's opinions are consistent with his treatment notes and the medical evidence as a whole, they have been incorporated into the [RFC] assessed herein."  (Tr. 383).  The ALJ noted Dr. Manudhane's findings from May 2007 and treatment notes reflected the doctor's impression that Plaintiff was mildly to moderately depressed and anxious, but without suicidal or homicidal ideation.  (*Id.*).  The ALJ also chronicled Plaintiff's mental health treatment between 2006 and 2008, noting some improvement in 2006, and more consistent treatment in 2007 and 2008 with no significant symptoms or psychiatric hospitalizations.  The ALJ also highlighted that medication was able to effectively

17

stabilize Plaintiff's mood with no reported negative side effects.  Thus, the ALJ's failure to explicitly label the amount of weight he assigned to the opinion was harmless because one can discern how and why the ALJ viewed the doctor's opinion as he did.  *Friend*, 375 F. App'x at 551.

Plaintiff submits the ALJ should not have relied upon a treatment note from July 2006 to discredit the whole of Dr. Manudhane's findings.  The undersigned agrees that it would not have been reasonable for the ALJ to use this single note to reject all of Dr. Manudhane's findings.  However, the ALJ did not completely reject the doctor's findings, nor was this note the determinate factor of the weight given to Dr. Manudhane's opinions.  The ALJ also based his decision on the fact that Plaintiff had not been hospitalized for her mental health impairments, nor were there significant symptoms consistently noted by Dr. Manudhane or Gholston's other mental health providers.

Additionally, the ALJ credited the opinion of state agency psychologist, Dr. Steven Meyer, who reviewed Plaintiff's medical file in June 2007.  Dr. Meyer found some of Dr. Manudhane's findings were both unsupported by the record and his treatment notes.  (Tr. 677).  Based upon Plaintiff's admitted ability to deal with home stressors, interact with family and friends, drive, shop and maintain concentration to complete simple tasks, Dr. Meyer opined Gholston could tolerate the stress of a "routine and predictable work environment without strict production quotas" and could interact with others on an occasional basis.  (*Id*.).  Therefore, the ALJ's decision to partially discount Dr. Manudhane's (pre-2009) opinion was not solely based upon a single instance where Plaintiff's mood was stable, but rather on a review of several pieces of evidence in the record.

Gholston points out that in January 2009, Dr. Manudhane completed a Medical Source Statement evaluating her mental capacity.  (Tr. 851-52).  In the report he rated Plaintiff's mental capacity to make occupational adjustments, perform various intellectual functions and to make personal and social adjustments, based on a series of 21 different tasks.  (*Id*.).  Dr. Manudhane opined Plaintiff had poor abilities in all but 4 tasks in which he rated Plaintiff as retaining a fair ability.  But, these findings, while significant, do not change the Court's ruling above.  Dr. Manudhane issued this opinion during the period under which the ALJ found Gholston to be disabled, and the opinion does not indicate that it reflected Plaintiff's mental capacity prior to this time.  Thus, there is no basis for the Court to conclude that the findings contained within the report reflected Dr. Manudhane's opinions about Plaintiff's mental capacity prior to January 2009, to call the ALJ's ruling into question.

### 3.  Failure To Seek Additional Medical Expert Testimony

"An ALJ has discretion to determine whether further evidence, such as additional testing or expert testimony, is necessary."  *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001) (*citing* 20 C.F.R. §§ 404.1517, 416.917).  The regulations *permit*, but do not demand, the ALJ to seek such testimony when there is not sufficient medical evidence in the record to allow the ALJ to determine whether the claimant is disabled.  20 C.F.R. § 416.917.  In this case, there was adequate medical evidence in the record for the ALJ to assess Gholston's RFC throughout the entire relevant period.  The ALJ was equipped with treatment records from Plaintiff's physicians, opinions from state agency physicians and the ME's testimony.

Plaintiff makes much of the fact that the ME only testified regarding Plaintiff's physical capacity through October 2006.  Gholston claims the ALJ should have asked the ME to also evaluate Plaintiff's disabled status between October 2006 and January 2009.  Accordingly,

19

Plaintiff contends the undersigned should remand the case and order the ALJ to retain additional expert testimony to discuss Plaintiff's health during this period.  But, Plaintiff overlooks the fact that there was other evidence in the record speaking to the severity of her impairments between October 2006 and January 2009 (i.e. Plaintiff's testimony, treatment notes and reports from state agency physicians).  Given the existence of this evidence, the Court finds the ALJ did not abuse his discretion in declining to question the ME about Plaintiff's disabled status during this time period, nor is remand necessary to acquire such testimony from a medical expert.  *See id*. Finally, without making reference to any specific occurrence, Plaintiff implies the ALJ improperly relied upon the ME's testimony to undercut medical evidence in the record dated after October 2006.  The Court cannot discern where the ALJ took such action.  Rather, upon the Court's review, it appears the ALJ properly relied upon the remaining evidence in the record to assess Plaintiff's RFC after October 2006.  Plaintiff's objection is overruled.

VI.  DECISION

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is supported by substantial evidence.  Accordingly, the Court AFFIRMS the decision of the Commissioner.

IT IS SO ORDERED.

s/ Kenneth S. McHargh
Kenneth S. McHargh
United States Magistrate Judge

Date:  September 17, 2012.